Stewaet, J.
The General Assembly has enacted the Ohio Sales Tax Act, Chapter 5739, Revised Code, and the Ohio Use Tax Act, Chapter 5741, Revised Code.
There was some disagreement in the present cause as to whether it is concerned with the sales tax or the use tax, since the truck involved was purchased outside Ohio, but the record does not disclose whether the contract for its purchase was consummated in Ohio. However, so far as the questions in this case are concerned, the provisions of both the Sales Tax Act and the Use Tax Act are practically identical.
Section 4505.06, Revised Code, provides in part as follows:
“In the following cases the clerk shall accept for filing such application and shall issue certificate of title without requiring payment or evidence of payment of either tax:
t C ^
“(C) When the purchase is outside this state or in interstate commerce and the purpose of the purchaser is not to use, store, or consume within the meaning of Section 5741.01 of the Revised Code.”
Section 5741.01 defines “use” as follows:
“(C) ‘Use’ means and includes the exercise of any right or power incidental to the ownership of the thing used, except as provided in this division of this section.
“When the purpose of the consumer is any of the following: (1) To resell the thing purchased in the form in which the same has been received by him; (2) * # * to use or consume the thing transferred * * * directly in the rendition of a public utility service * *
Section 5741.01 (.D) defines “purchase” as follows:
“(D) ‘Purchase’ means acquired for a consideration, *24 whether such acquisition was effected by a transfer of title, or of possession, or of both, or a license to use or consume; whether such transfer was absolute or conditional, and by whatever means the same was effected; and whether the consideration was a price, rental in money, or exchange.”
The Sales Tax Act contains similar provisions.
It is the contention of Stutler, and that contention was upheld by the Court of Appeals, that there had been a purchase of the truck with which we are concerned by the A.C.E. Transportation Company, Inc., hereinafter designated A.C.E., as “purchase” is defined in the statute. .
There is a motor freight transportation agreement, dated January 14, 1958, between Stutler and A.C.E., and a further equipment lease agreement between the two, dated January 15, 1958, by which Stutler is to furnish the truck to A.C.E., by lease, and to provide transportation service for A.C.E. between points designated by it.
Stutler and A.C.E. treated the leasing of the equipment as a statutory sale, and, therefore, A.C.E. executed and delivered an exemption certificate to Stutler showing that the truck is to be used directly in the rendition of a public utility service, A.C.E. being a holder of the permits issued by the Public Utilities Commission.
The possession of the truck was turned over to A.C.E., and, since the transfer was made, and the receipt for the truck was given by A.C.E. to Stutler, in Ohio, the Sales Tax Act must control in determining whether such transfer constituted a sale.
Section 5739.01, Revised Code, reads in part as follows:
“(B) ‘Sale’ and ‘selling’ include all transactions by which title or possession, or both, of tangible personal property, is or is to be transferred, or a license to use or consume tangible personal property is granted, for a consideration in any manner, whether absolutely or conditionally, whether for a price or rental, in money or by exchange, or by any means whatsoever * *
The Court of Appeals held that, since the truck had been transferred and A.C.E. had possession of it, and the contract between Stutler and A.C.E. provides for payment for the trans *25 fer and use, there had been a reselling of the truck by Stutler to A.C.E., and, therefore, Stutler is entitled to a certificate of title from the clerk without the payment of a sales or use tax.
The clerk contends that, since the contract between Stutler and A.C.E. provides that the truck shall be maintained in first class repair at the expense of Stutler, that it will be operated at Stutter’s expense, and that it will provide workmen’s compensation coverage for its drivers and employees and pay all state and federal taxes for unemployment insurance, old age pensions and other benefits, Stutler has not actually parted with possession of the truck but that it has simply contracted to furnish a service to A.C.E., even though it agreed to operate the truck over only the certified roads of A.C.E. and to comply with all the rules and regulations of the Interstate Commerce Commission, Bureau of Motor Carriers, and any public utilities commission.
As a result of the conclusion at which we have arrived, it is unnecessary for us to decide whether a statutory sale has been made by Stutler to A.C.E.
The statutes provide that a sales or use tax need not be paid, where it is the purpose of the consumer of the article purchased to use or consume the thing transferred directly in the rendition of a public utility service.
Stutler is the consumer and, in the affidavit attached to the petition for a writ of mandamus, it says “that it is the intent of the consumer to use the motor vehicle described in the aforesaid application for certificate of title and the receipt from the A.C.E. Transportation Company, Inc., and said lease agreement solely and directly in the rendition of a public utility service.”
It is undisputed that Stutler itself is not a public utility, and it is likewise undisputed that A.C.E., in whose service the truck is to be used by contract, is a public utility.
The contention is made that, in order to be exempt from the payment of a sales or use tax in a situation like the present one, the consumer must be a public utility and not simply one who uses the thing transferred in the rendition of a public utility service of another.
*26 It is true that Stutler operates the truck, but it is operated in the public utility service of A.C.E., over the routes designated by it in exclusively rendering its public utility service.
The statute does not say that the consumer must be a public utility. It simply says that it must be his purpose to use or consume the thing transferred directly in the rendition of a public utility service.
There is no question that the truck will be used exclusively by the consumer in a public utility service, even though the consumer is not itself a public utility.
This court has said that it is the use of the thing rather than the character of the consumer or user that is determinative of the question of tax exception.
In the case of Apex Powder Corp. v. Peck, Tax Commr., 162 Ohio St., 189, 122 N. E. (2d), 693, the syllabus reads:
“Within the meaning of the exception of the definition of retail sale and sales at retail in Section 5546-1, General Code [Section 5739.01, Revised Code], a ‘consumer’ may have a ‘purpose * * * to use’ a ‘thing transferred directly in the production of tangible personal property for sale by * * * mining,’ even though such tangible personal property will not be owned or sold by such consumer.”
In the Apex Powder case, Apex entered into a contract with certain property owners to do drilling and blasting in connection with mining upon their premises. Apex contended that its purchase of drilling and blasting equipment was excepted from the sales or use tax because its purpose was to incorporate or consume such property directly in the production of tangible personal property for sale by mining, which was a basis for exception.'
The Tax Commissioner contended that there could be no exception for the reason that Apex did not own or sell the minerals, was only performing a service, and, therefore, was not engaged in the production of tangible personal property for sale by mining. However, this court rejected that contention and held that it made no difference whether Apex owned the mines or sold the minerals, as long as it was using its property directly in the production of the minerals. By the same logic, it seems to us that it makes no difference that Stutler is not a *27 public utility, as long as it is using its property directly in the rendition of a public utility service, as it has contracted to do in the public utility service of A.C.E.
It likewise seems to us that the same logic controlled our decision in the case of Zinc Engravers v. Bowers, Tax Commr., 168 Ohio St., 43, 151 N. E. (2d), 226, where, in the second paragraph of the syllabus, it is stated:
“Mats, engravings and' etchings purchased by a retail business concern and then delivered by it without charge to noAvspaper publishers for use in newspaper advertisements concerning its merchandise are used directly in making retail sales within the meaning of Section 5739.01, Revised Code, and sales of such materials for such purpose are excepted from the tax.”
In the Zinc Engravers case, it was contended that the retail business concern did not use the mats, engravings and etchings which it owned directly in making retail sales, but that the newspaper made such use thereof. However, we again held that it was the use of the property and not the status of the one using it that Avas the controlling factor.
Since it is undisputed that A.C.E. is a public utility and that the truck is to be used directly in the rendition of a public utility service, the consumer, or Stutler, is entitled to its certificate of title, Avithout the payment of a sales or use tax.
The judgment of the Court of Appeals is affirmed.

Judgment affirmed.

Weygandt, C. J., Taet and Matthias, JJ., concur.
Zimmerman, Bell and Herbert, JJ., dissent.